AO93 Search and Seizure Warrant
_____

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a black Motorola smartphone and a blue Motorola smartphone<br>found in a gray Chevrolet Tahoe SUV bearing Arizona license<br>plate #W8A833. | Case No.    26-9101 MB |

## SEARCH AND SEIZURE WARRANT

To:    Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before    4/8/2026    _(not to exceed 14 days)_
☐ in the daytime 6:00 a.m. to 10:00 p.m. ☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for _30_ days _(not to exceed 30)_ ☐ until, the facts justifying, the later specific date of _____.

Date and time issued:    3/25/2026@3:05pm    _____
                                                  _Judge's signature_

City and state: Phoenix, Arizona    Honorable EILEEN S. WILLETT, U.S. Magistrate Judge
                                    _Printed name and title_

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black in color Motorola cellphone, serial number is unknown ("SUBJECT CELLULAR TELEPHONE 1"), and a blue in color Motorola cellphone, serial number is unknown ("SUBJECT CELLULAR TELEPHONE 2"), (collectively, the "SUBJECT CELLULAR TELEPHONES"). The SUBJECT CELLULAR TELEPHONES are currently located at the DEA Yuma Residence Office.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.



*Image: SUBJECT CELLULAR TELEPHONE 1*



*Image: SUBJECT CELLULAR TELEPHONE 2*

## ATTACHMENT B

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES dating from November 25, 2025, to present that relate to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), including:

   a.   all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

   b.   all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

   c.   all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

   d.   all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

   e.   any information recording schedule or travel;

   f.   evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

   g.   contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

   As used above, the terms "records" and "information" includes records of telephone

calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and devices information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

AO 106 Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>a black Motorola smartphone and a blue Motorola smartphone<br>found in a gray Chevrolet Tahoe SUV bearing Arizona license<br>plate #W8A833. | Case No.   26-9101 MB |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**As further described in Attachment A**

located in the District of Arizona, there is now concealed:

**As set forth in Attachment B.**

The basis for the search under Fed. R. Crim. P. 41(c) is:

☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☒ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code/Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) & (b)(1)(A)(viii) | Possession of a Controlled Substance with Intent to Distribute (Methamphetamine) |

The application is based on these facts:

**See attached Affidavit of Special Agent Kurt Mitchell**

☒ Continued on the attached sheet.
☐ Delayed notice of  30  days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Jacqueline C. Pecaro

*Jacqueline C. Pecaro*   ⸢ Digitally signed by
JACQUELINE PECARO
Date: 2026.03.23 15:58:3
-07'00'

Sworn to telephonically and signed electronically.

Date:   3/25/2026@3:05pm  _____

City and state: Phoenix, Arizona  _____

KURT MITCHELL Digitally signed by KURT MITCHELL
Date: 2026.03.23 12:49:08 -07'00'
_____
*Applicant's Signature*

Special Agent Kurt Michell, U.S. Drug Enforcement
Administration  _____
*Printed name and title*

*E.S.Willett*
_____
*Judge's signature*

Honorable EILEEN S. WILLETT, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

*Property to be searched*

The property to be searched is a black in color Motorola cellphone, serial number is unknown ("SUBJECT CELLULAR TELEPHONE 1"), and a blue in color Motorola cellphone, serial number is unknown ("SUBJECT CELLULAR TELEPHONE 2"), (collectively, the "SUBJECT CELLULAR TELEPHONES"). The SUBJECT CELLULAR TELEPHONES are currently located at the DEA Yuma Residence Office.

This warrant authorizes the forensic examination of the SUBJECT CELLULAR TELEPHONES for the purpose of identifying the electronically stored information described in Attachment B.



*Image: SUBJECT CELLULAR TELEPHONE 1*



*Image: SUBJECT CELLULAR TELEPHONE 2*

**ATTACHMENT B**

*Property to be seized*

1.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES dating from November 25, 2025, to present that relate to violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), including:

     a.  all information related to the sale, purchase, receipt, shipping, importation, transportation, transfer, possession, or use of drugs;

     b.  all information related to buyers or sources of drugs (including names, addresses, telephone numbers, contact information, photographs, locations, or any other identifying information);

     c.  all bank records, checks, credit card bills, account information, or other financial records reflecting the disposition of drug proceeds;

     d.  all information regarding the receipt, transfer, possession, transportation, or use of drug proceeds;

     e.  any information recording schedule or travel;

     f.  evidence indicating the cellular telephone user's state of mind as it relates to the crime under investigation;

     g.  contextual information necessary to understand the above evidence.

2.     Any records and information found within the digital contents of the SUBJECT CELLULAR TELEPHONES showing who used or owned the devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, correspondence, photographs, and browsing history;

As used above, the terms "records" and "information" includes records of telephone

calls; names, telephone numbers, usernames, or other identifiers saved in address books, contacts lists and other directories; text messages and other stored communications; subscriber and devices information; voicemails or other audio recordings; videos; photographs; e-mails; internet browsing history; calendars; to-do lists; contact information; mapping and GPS information; data from "apps," including stored communications; reminders, alerts and notes; and any other information in the stored memory or accessed by the electronic features of the cellular telephone.

2

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

Your Affiant, Kurt Mitchell, being first duly sworn, hereby deposes and states as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.    Your Affiant makes this Affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to examine the cellular telephones described more particularly in Attachment A (hereafter the "SUBJECT CELLULAR TELEPHONES"), and to extract the electronically stored information set forth in Attachment B, which represents evidence and/or instrumentalities of the criminal violations further described below.

2.    I am a Special Agent with the Drug Enforcement Administration ("DEA") and have been so since June 2009. I received a Bachelor of Arts degree in Criminal Justice from Washington State University, in May 2005. I have been employed with the DEA since February 2009, and I have been responsible for investigating violations of federal law including violations of the Controlled Substances Act. I am a United States "investigative or law enforcement officer" as set forth 18 U.S.C. § 2510(7), and I am authorized by law to conduct investigations and make arrests for offenses delineated in 18 U.S.C. § 2516.

3.    I was trained as a DEA Special Agent at the DEA Academy in Quantico, Virginia. During my nineteen-week training, I received specialized training in the Controlled Substance Act, Title 21 United States Code, including, but not limited to, Sections 841(a)(1) and 846 Controlled Substance Violations and Conspiracy to Commit Controlled Substance Violations. I received training related to criminal organizations engaged in conspiracies to manufacture and/or possess with intent to distribute marijuana, cocaine, cocaine base, heroin, methamphetamine, and other dangerous drugs prohibited by law. I received training regarding the Fourth Amendment and search and seizure law. I

was also trained in Confidential Source ("CS") management and investigative techniques, and numerous other facets pertaining to the criminal investigation of illicit drugs.

4.    During the course of my employment as a DEA Special Agent, I have participated in numerous criminal investigations and have gained knowledge and experience by working with other agents. I have participated in federal and state search warrants involving the seizure of the aforementioned listed controlled substances, the seizure of records relating to the manufacturing and distribution of controlled substances, and other types of evidence documenting the activities of drug trafficking organizations and their members. I have utilized numerous investigative techniques and resources and draw on the experience, techniques, and resources I have gained in my employment as a DEA Special Agent.

5.    The statements contained in this Affidavit are based on information derived from your Affiant's personal knowledge, training and experience; information obtained from the knowledge and observations of other sworn law enforcement officers, either directly or indirectly through their reports or affidavits; surveillance conducted by law enforcement officers; information provided by a confidential source; analysis of public records; controlled purchases of drugs; analysis of social media information; analysis of telephone records; intercepted communications; and analysis of financial records. Because this Affidavit is being submitted for the limited purpose of establishing probable cause for the requested warrant, your Affiant has not set forth all of the relevant facts known to law enforcement officers.

## II.    BASIS FOR PROBABLE CAUSE

6.    On February 25, 2026, United States Border Patrol Agent ("BPA") Melanie Cortes was in her clearly marked Border Patrol vehicle parked in the median of Interstate 10 ("I-10"), near mile marker 18 observing eastbound traffic. At approximately 4:50 P.M., BPA Cortes observed a gray Chevrolet Tahoe SUV bearing Arizona license plate

2

#W8A833. As the vehicle passed her location, BPA Cortes noticed that the vehicle switched from the lane closest to her location to the farthest lane from her location. Both lanes of the interstate were clear, and there was no apparent reason for the lane change. In her experience, BPA Cortes has seen illegal aliens and/or narcotics/alien smugglers use this tactic in order to distance their vehicle from her patrol vehicle, in an attempt to avoid law enforcement detection and apprehension. As the vehicle passed her location, the driver looked toward BPA Cortes's vehicle then quickly turned away and maintained a rigid uptight posture.

7.    BPA Cortes performed records checks of the vehicle on her government issued laptop, which revealed that the Chevy Tahoe was registered out of Glendale, Arizona, to a subject named Alberto Guadalupe MONZON-Felix (hereafter referred to as "MONZON"). Records on MONZON were very limited, so much so that BPA Cortes suspected that MONZON may have been an illegal alien. Records checks on the vehicle also revealed that the most recent traveler associated with the vehicle was Marcelino MICHEL (hereafter referred to as "MICHEL").

8.    Records checks indicated that the vehicle had been near Phoenix, Arizona, earlier in the morning and had conducted a quick turnaround trip to California, then back to Arizona. Conducting a quick turnaround trip from Arizona to California and back to Arizona in such a short period of time is consistent with recent alien- and/or narcotics-smuggling travel patterns. Based upon these queries, BPA Cortes believed that the driver of the vehicle was either an illegal alien or involved in the smuggling of illegal aliens or narcotics.

9.    BPA Cortes matched the speed of the Chevy Tahoe; the vehicle was traveling at about 90 miles per hour ("MPH"). The posted speed limit in this area is 75 MPH. As BPA Cortes drove closer to the Chevy Tahoe, she noticed that the driver hit the brakes and drastically reduced the vehicle's speed. The driver of the Chevy Tahoe then quickly,

3

without signaling, changed lanes and positioned the vehicle in between two semi-trucks.

10. The vehicle drove slowly to maintain its position between the two semi-trucks. In BPA Cortes's experience, this tactic is commonly utilized by individuals involved in illicit activity to make it difficult for a law enforcement vehicle to get behind individuals and for individuals to avoid being pulled over. The semi-truck that was behind the Chevy Tahoe eventually slowed down, which allowed BPA Cortes enough space to position her vehicle behind the Chevy Tahoe. As BPA Cortes drove behind the vehicle, she noticed that the driver was swerving over the fog line multiple times.

11. Due to the driver's behavior, the records checks run on the vehicle, and other characteristics noted of the vehicle, BPA Cortes turned on her vehicle's law enforcement lights to initiate a vehicle stop. The driver turned on the hazard lights of the vehicle then slowly moved onto the shoulder of I-10, near mile marker 23.

12. Initially, the vehicle was driving very slowly on the shoulder but then accelerated and failed to yield to BPA Cortes. BPA Cortes advised Yuma Sector Radio dispatch and pursued the Chevy Tahoe for several miles. The Chevy Tahoe spun out and ended up on the shoulder of I-10 eastbound, at mile marker 36, near Quartzsite, Arizona. BPAs Yoshiro Shibayama and Connor Oberg arrived at the scene.

13. The driver, later identified as MICHEL, a United States citizen, was the sole occupant of the vehicle. EMS services were requested for MICHEL, and he was provided with medical attention. MICHEL was taken into custody.

14. Subsequent to MICHEL's arrest, BPA Shibayama conducted a search of the vehicle. BPA Shibayama observed two large, closed plastic totes in the rear passenger area of the vehicle. BPA Shibayama opened the totes, which contained packages of an off-white crystal-like substance. In BPA Cortes's experience, the substance in these packages exhibited the characteristics of methamphetamine. BPA Cortes opened the center console of the vehicle and saw a plastic bag with what appeared to be methamphetamine in it. The

4

substance was tested utilizing a Mobile-Detect test. The substance tested positive for methamphetamine. During the search of the vehicle, BPA Cortes also located a black Motorola smartphone (hereafter referred to as "SUBJECT CELLULAR TELEPHONE 1"), near the same area where the bag of methamphetamine was located in the center console.

15. The packages and bag of the crystal-like substance and SUBJECT CELLULAR TELEPHONE 1 were taken to the Blythe Border Patrol Station for further processing. At the Blythe Station, the packages and plastic bag were counted and weighed. The crystal-like substance was tested utilizing a Tru-Narc device and tested positive for the presence of methamphetamine. There were a total of 51 packages in the totes and 1 plastic bag found in the center console. The total weight of the methamphetamine, including packaging, was approximately 49.24 gross kilograms.

16. On February 27, 2026, the Yuma Sector Evidence Collection Team was requested to collect evidence from the aforementioned Chevrolet Tahoe operated by MICHEL on February 25, 2026. On this same date, U.S. Border Patrol Agent ("BPA") Intelligence J. Keaton collected evidence from the vehicle. The vehicle was located at the vehicle storage area in the Yuma Sector Annex compound. During the evidence collection process, a blue Motorola cellphone (hereafter referred to as "SUBJECT CELLULAR TELEPHONE 2") was found behind the driver's seat. SUBJECT CELLULAR TELEPHONE 2 was buried under dirt that had entered the vehicle during a crash. The dirt was removed and SUBJECT CELLULAR TELEPHONE 2 was collected as evidence. SUBJECT CELLULAR TELEPHONE 2 was stored in the evidence collection room over the weekend along with all other items collected from the vehicle.

17. The SUBJECT CELLULAR TELEPHONES are currently in the lawful possession of the DEA Yuma Resident Office ("YRO"). The SUBJECT CELLULAR TELEPHONES were seized during a search of the target vehicle, which was driven by MICHEL.

5

18.    The SUBJECT CELLULAR TELEPHONES are currently in storage at the DEA YRO.  In my training and experience, I know that the SUBJECT CELLULAR TELEPHONES have been stored in a manner in which the contents are, to the extent material to this investigation, in substantially the same state as they were when the SUBJECT CELLULAR TELEPHONES first came into the possession of the DEA YRO.

## III.    ITEMS TO BE SEIZED

19.    Based upon the facts contained in this Affidavit, your Affiant submits there is probable cause to believe that the items listed in Attachment B will be found in the contents of the SUBJECT CELLULAR TELEPHONES.

a.    Based on my training, education, and experience, and discussions with other trained law enforcement personnel, along with information provided by sources of information and confidential sources, your Affiant knows the following: Drug traffickers commonly use cellular telephones to communicate with other drug traffickers and customers about drug-related activities through the use of telephone calls, text messages, email, chat rooms, social media, and other internet- and application-based communication forums. Moreover, drug traffickers commonly use other capabilities of cellular telephones to further their drug trafficking activities.  Therefore, evidence related to drug trafficking activity is likely to be found on the SUBJECT CELLULAR TELEPHONES.

b.    Drug traffickers often have access to large amounts of United States currency in order to maintain and finance their ongoing trafficking activities.  Therefore, records of the movement of drug proceeds, including deposits, transfers, and purchases, are likely to be found on the SUBJECT CELLULAR TELEPHONES.

c.    Drug traffickers and persons involved in the manufacturing, distributing, sorting, and possession of controlled substances often possess firearms and other weapons, both legal and illegal, in order to protect their person, drugs, or the proceeds of drug transactions.  Moreover, drug traffickers commonly take photographs of their

6

firearms. Therefore, photographs of firearms and records related to the possession, acquisition, and sale of firearms are likely to be found on the SUBJECT CELLULAR TELEPHONES.

20. In addition to items which may constitute evidence and/or instrumentalities of the crimes set forth in this Affidavit, your Affiant also requests permission to seize any articles tending to establish the identity of persons who have dominion and control over the SUBJECT CELLULAR TELEPHONES.

## IV. DIGITAL EVIDENCE STORED WITHIN A CELLULAR TELEPHONE

21. As described in Attachment B, this application seeks permission to search for records and information that might be found in the contents of the SUBJECT CELLULAR TELEPHONES. Thus, the warrant applied for would authorize the copying of electronically stored information under Rule 41(e)(2)(B).

22. *Probable cause.* Your Affiant submits that there is probable cause to believe records and information relevant to the criminal violations set forth in this Affidavit will be stored on the SUBJECT CELLULAR TELEPHONE for at least the following reasons:

a. Your Affiant knows that when an individual uses a cellular telephone, the cellular telephone may serve both as an instrumentality for committing the crime and also as a storage medium for evidence of the crime. The cellular telephone is an instrumentality of the crime because it is used as a means of committing the criminal offense. The cellular telephone is also likely to be a storage medium for evidence of crime. From my training and experience, your Affiant believes that a cellular telephone used to commit a crime of this type may contain: data that is evidence of how the cellular telephone was used; data that was sent or received; notes as to how the criminal conduct was achieved; records of Internet discussions about the crime; and other records that indicate the nature of the offense.

b. Based on my knowledge, training, and experience, your Affiant

7

knows that cellular telephones contain electronically stored data, including, but not limited to, records related to communications made to or from the cellular telephone, such as the associated telephone numbers or account identifiers, the dates and times of the communications, and the content of stored text messages, e-mails, and other communications; names and telephone numbers stored in electronic "address books;" photographs, videos, and audio files; stored dates, appointments, and other information on personal calendars; notes, documents, or text files; information that has been accessed and downloaded from the Internet; and global positioning system ("GPS") information.

c.    Based on my knowledge, training, and experience, your Affiant knows that electronic files or remnants of such files can be recovered months or even years after they have been downloaded onto a cellular telephone, deleted, or viewed via the Internet. Electronic files downloaded to a cellular telephone can be stored for years at little or no cost. Even when files have been deleted, they can be recovered months or years later using forensic tools. This is so because when a person "deletes" a file on a cellular telephone, the data contained in the file does not actually disappear; rather, that data remains on the cellular telephone until it is overwritten by new data.

d.    Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space—that is, in space on the cellular telephone that is not currently being used by an active file—for long periods of time before they are overwritten. In addition, a cellular telephone's operating system may also keep a record of deleted data in a "swap" or "recovery" file.

23.    *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronic files that might serve as direct evidence of the crimes described on the warrant, but also for forensic electronic evidence that establishes how the cellular telephone was used, the purpose of the use, who used it, and when. There is probable cause to believe that this forensic electronic evidence will be found

8

in the contents of the SUBJECT CELLULAR TELEPHONES because:

      a.     Data in a cellular telephone can provide evidence of a file that was once in the contents of the cellular telephone but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

      b.     As explained herein, information stored within a cellular telephone may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, information stored within electronic storage medium (e.g., registry information, communications, images and movies, transactional information, records of session times and durations, internet history, and anti-virus, spyware, and malware detection programs) can indicate who has used or controlled the cellular telephone. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. The existence or absence of anti-virus, spyware, and malware detection programs may indicate whether the cellular telephone was remotely accessed, thus inculpating or exculpating the owner. Further, activity on a cellular telephone can indicate how and when the cellular telephone was accessed or used. For example, as described herein, cellular telephones can contain information that log: session times and durations, activity associated with user accounts, electronic storage media that connected with the cellular telephone, and the IP addresses through which the cellular telephone accessed networks and the internet. Such information allows investigators to understand the chronological context of cellular telephone access, use, and events relating to the crime under investigation. Additionally, some information stored within a cellular telephone may provide crucial evidence relating to the physical location of other evidence and the suspect. For example, images stored on a cellular telephone may both show a

9

particular location and have geolocation information incorporated into its file data. Such file data typically also contains information indicating when the file or image was created. The geographic and timeline information described herein may either inculpate or exculpate the user of the cellular telephone. Last, information stored within a cellular telephone may provide relevant insight into the user's state of mind as it relates to the offense under investigation. For example, information within a computer may indicate the owner's motive and intent to commit a crime (e.g., internet searches indicating criminal planning), or consciousness of guilt (e.g., running a "wiping" program to destroy evidence on the computer or password protecting/encrypting such evidence in an effort to conceal it from law enforcement).

c.    A person with appropriate familiarity with how a cellular telephone works can, after examining this forensic evidence in its proper context, draw conclusions about how the cellular telephone was used, the purpose of its use, who used it, and when.

d.    The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on a cellular telephone that are necessary to draw an accurate conclusion is a dynamic process. While it is possible to specify in advance the records to be sought, cellular telephone evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on one cellular telephone is evidence may depend on other information stored on that or other storage media and the application of knowledge about how electronic storage media behave. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.    Further, in finding evidence of how a cellular telephone was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium. For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant

10

to establishing the user's intent.

24.     *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit imaging or otherwise copying the contents of the SUBJECT CELLULAR TELEPHONES, including the use of computer-assisted scans.

25.     *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## V.     <u>CONCLUSION</u>

26.     Your Affiant submits there is probable cause to believe that the items listed in Attachment B, which constitute evidence and/or instrumentalities of violations of 21 U.S.C. § 841 (Possession with Intent to Distribute a Controlled Substance), are likely to be found in the contents of the SUBJECT CELLULAR TELEPHONES further described in Attachment A.

KURT
MITCHELL
Digitally signed by KURT MITCHELL
Date: 2026.03.25 12:50:08 -07'00'

Special Agent KURT MICHELL
U.S. DRUG ENFORCEMENT
ADMINISTRATION

Subscribed and sworn to me telephonically this ___25___ day of March, 2026.

HONORABLE EILEEN S. WILLETT
United States Magistrate Judge

11